The next case called the Oral Argument is Yates v. Board of Trustees, the Police-Counseling Division. Good morning, many thanks for your support. Essentially, we are here this morning. There are really two issues before the court. First of all, was Mrs. Fields entitled to survivor benefits under the code? And two, if not, is the fund entitled to recover anything under the circumstances of this case? Our position is quite simply this, that at the time of Mr. Fields' passing, the same pension board did in fact hold a hearing and rendered a waiver of benefits. Now unfortunately, because the board itself did not live up to its statutory duty to keep a file on this, we don't have that record available to us. What we do know, however, is that for a period of years, she did receive benefits. Our position number one is that she was in fact correctly awarded benefits after Mr. Fields' passing. Pursuant to the pension code statute itself, the question is whether the parties were married at the time of retirement. There is no question in this case, there is no dispute about that they were in fact married at the time of Mr. Fields' retirement. Under the pension code, that is the point at which pension rights are triggered, the condition preceding for pension rights, if you will. There is nothing referenced that we can see that we found in the pension code dealing with divorce, and I would submit to the court the reason for that is because in the Illinois Marriage and Dissolution of Marriage Act, it specifically lists pension benefits pursuant to the code as a marital benefit, and therefore to do so under the pension code would fly in the face of the Illinois Marriage and Dissolution of Marriage Act. I would also point out that following this initial finding of the pension board, the 35-day administrative review time obviously ran with the board never raising any type of appeal. So again, it's very clear that at the time he retired and immediately thereafter, Mrs. Fields did in fact enjoy pension benefits, whether or not they had best yet based upon Mr. Fields remaining alive. It's also clear from the case that subsequent to Mr. Fields' retirement, the parties did in fact divorce. Those documents were provided as requested by Mrs. Fields, there's no question about that. As part of that divorce, Mrs. Fields and Mr. Fields, between themselves, entered into an agreement whereby she would she had waived rights to his pension. That, however, is an agreement between Mr. and Mrs. Act rather than between Mrs. Fields and the police pension board under the pension code. And that's why in our brief we bring up the fact that the Illinois case law involving marriage and dissolution of marriage has between spouses when they remarry, essentially takes them back to the pre-divorce status which they enjoyed, which in this case, her waiver of benefits would be treated as unenforceable and unavoidable. And there were a number of years, obviously, they lived as husband and wife after the remarriage before Mr. Fields' ultimate passing. We believe, therefore, that the initial decision by the pension board at the time of Mr. Fields' death was absolutely correct in that she was in fact still entitled to the benefits of a surviving spouse. The next issue that comes before us then, even assuming we're wrong about that, is do they have a right to recover? That statute itself is also clear in that benefits can be recovered in three situations, estate, fraud, or inheritance. But it's also clear that they can be recovered only through reduction of benefits payable in the future, which even assuming they were correct that she was entitled to no further benefits, there's no provision there to request a surviving spouse or a pensioner to write a check out of their own account to pay back funds that they had already received. Also in this case, at least the brief which has been filed by the pension board, seems to indicate there's allegations of fraud and misrepresentation. Frankly, I see absolutely no evidence from which anyone could conclude that. Mrs. Fields provided everything that she could. She never made any independent statements that weren't in any way inaccurate. She simply turned over information. The pension board at the time of Mr. Fields' death made a decision based on that information and their interpretation of the pension code. And I think the recognition that that was an interpretation of the pension code is critical based on more Kazakowski, the most recent, indicating that to claim error in a situation where you don't have fraud or misrepresentation, it is not an error under that provision which allows recovery. If what happens is the police pension board at some subsequent date goes back and And again, our position remains that she's entitled to the benefits and therefore should be paid from the date she was cut off wrongfully up through the date of her death. But in no event is there any provision for repayment from anything other than subsequent benefits due in payment. Thank you. Thank you. May it please the court, Justice Goldenherz, Justice Welch, Justice Wexton, apply a tape The key in this case and the point I want to make right up front is counsel in both his brief and in his oral statements today talks about what the board had and what the board didn't have. There's no evidence in the record that shows that Lorraine Fields informed the board at the time of the death of Leroy Fields that she and Mr. Fields had Now the statute is clear that if an individual is married at the time he applies for a retirement benefit under Article 3, which deals with police retirements, that that individual police officer qualifies for retirement benefits. However, the surviving spouse will only qualify for that benefit if there are no intervening events. In this particular case, we did have some intervening events, and the intervening event was that Mr. and Mrs. Fields subsequently divorced a number of years after the retirement. That was in Madison County. The board was not informed of the divorce proceedings or that the divorce had taken place, nor were they ever informed that a remarriage had taken place. So when counsel suggests, both in his brief and in an oral argument, that somehow the board was aware of that, they were not as it periodically does. There's a statute that requires the Department of Insurance, for example, the regulatory agency, to perform audits of pension funds every three years. In preparation of those anticipated audits, boards frequently will go through their files to make sure everything is contained in the files that need to be there. What happened here was we had a change in some board membership. Some of the board members went back through the files and, you know, became informed through the general community that a divorce had taken place. So they felt it was incumbent to notice this matter up, to give Mrs. Fields an opportunity to address the situation, and then review the information the board had subsequently obtained, which is the information about the divorce in Madison County, the divorce decree, and the subsequent information. It's important when we look at the timing sequence here and apply the applicable statutes. Counsel says to you the statute is clear that in these circumstances, a benefit should be awarded. Well, the statute is clear that Mr. Fields was entitled to a retirement benefit. That is certainly clear. But what is equally clear is when you read 40 ILCS 53120, that statute is very specific. It says if a police officer marries subsequent to retirement of any pension under the article other than a pension established under Section 3-109.3, which deals with self-managed plans, then the surviving spouse and children of such surviving spouse shall receive no pension on the death of the officer. Now, that's what the court is presented with here today. In the brief, opposing counsel would like the court to say, well, we need to look into the legislative intent. We need to look at some of the cases, some of the divorce cases that opposing counsel has cited in their brief and say, you know, the court should somehow discount the fact that these people were divorced and then subsequently remarried, and the remarriage somehow brings us back to four days before he retired and the same benefits he and she were entitled to then she now remains entitled to later. That's not how this statute reads. This statute is clear. It's unambiguous. When it's clear and unambiguous, we don't look at the legislative intent. We know what the legislature intended by their statements. Now, one might say, and this is the Siciliano v. Village of Westchester firefighter case. Now, I'll remind the court that that is an Article IV pension case. Let's talk a minute about the difference between Article III and Article IV in the pension code. Article III in the pension code, which is what our case is about, deals with police officers and the types of benefits that they're eligible to receive. Article IV, which is the Westchester fire case, deals with pension benefits that may be allowed to retired and disabled firefighters. Now, there are distinct differences between Article III and Article IV when it comes to benefits that are to be awarded to retired members. The court in the Siciliano case accurately points out that this is an Article IV case, not an Article III case, and it goes on to say that when articles V and VI of the pension code, which are Cook County Fire and Cook County Police, all of those pension codes have language in them that's in clear language that terminates surviving benefits upon remarriage, and that's what we have here. But Article IV is different, and Article IV says that surviving spouses receive benefits while unmarried, and those benefits will be suspended if they remarry. But if the new marriage then ends in a divorce or death, they then become eligible to receive the benefits from the first husband or spouse, right? So there's a big difference. When they spend time in their brief talking about an Article IV case, it has no application to this case. And the court might sit here and wonder, you know, why did the legislature employ different language in Article III and Article IV? I, as a pension board attorney, and I've been doing this since 1996, have often asked that question. Maybe one pension fund had better lobbyists in a given year when legislation was being advocated, and maybe the legislature just felt for whatever specific reason at the specific time we need to treat firefighters differently than police. But there are many, many differences if you spend the time that I've spent looking at Article III and Article IV. Subtle distinctions I'll grant you, but distinctions just the same. For example, in Article III, it says police officers who serve on these boards serve for two-year terms. For Article IV, they're three-year terms. When you talk about the ability to award a non-duty benefit, under Article IV, the fire code, you have to be a firefighter for at least seven years before you're eligible for a non-duty disability. There's no such language in Article III of the police code. The police code, Article III allows for portability issues, where a police officer can move from one department, move his pension money into another Article III department. Article IV, the firefighters aren't afforded that privilege or that opportunity to do the portability. And there are just a number of distinctions. Well, this is a distinction in this case, and if we look at 40 ILCS 5-3120, the statute is clear and unambiguous, and when we apply the facts to this case, to that statute, Mrs. Fields is not entitled to receive her benefits. If this court were to allow the relief that my opponent seeks, I would argue that this court would be enhancing a benefit not contemplated by the legislature. In today's day and age, I think we all know what's going on in our legislature and the financial problems the state is grappling with. And pension reform is a big issue. And enhanced benefits that have materialized over the years is an issue the legislature is refocusing on and trying to put the state in a better financial position. I don't think this court puts itself in a when the language is clear and unambiguous. Counsel raised in his brief some arguments that somehow his client was entitled to her due process. The court looks at the record very clearly. His client received a certified letter of return receipt signed by his client notifying her that the board was going to appear. She subsequently submits an affidavit saying, I was told otherwise, but there's a counter affidavit to that effect challenging that assertion. The notice was very clear that she had an opportunity to be present. She wasn't present. The exhibits are in your packets. The board considered those exhibits and reached the conclusion, I believe rightfully, based upon the statute and the documentation provided. The last thing that counsel brings up deals with a recuperation of monies. In this particular case, the board concluded, based upon the documentation rendered at the hearing, that there was about $170,000 in overbenefits that were paid out. The board ceased to recover that money. The board feels it has a fiduciary duty to do so and recover that money for the other pension fund beneficiaries within the pension fund system. So I believe the board acted properly under the circumstances. They provided the proper notice to Ms. Fields and gave her an opportunity to be heard. The board did suspend that initial payment, but I would remind the court that that was only a suspension, not a termination, until there was an opportunity for Ms. Fields to be heard, and we're only talking about a one-month period. Ultimately, the board rendered a decision to terminate those benefits, which obviously then went to the circuit court. The circuit court upheld the board, and now we're here today before you, Justices, to decide whether or not the board acted properly in its disposition of this case. Thank you. Thank you, Counsel. Excuse me, Counsel? May I please report? The one thing that we're absolutely certain of is that at the time of her time, Mr. and Mrs. Fields were married. I don't speak the language of Section 120. It's also clear to me under the Illinois Law, Illinois Dissolution of Marriages Law, as well as under the Code, at the time the parties divorced, the rights infested under the pension code, and Mrs. Fields at that point did in fact have some rights. I don't find anything in the pension code to indicate that by divorcing, those rights are terminated. I simply don't think it exists, and I don't think it can because of the conflict it would create between the Illinois Marriage and Dissolution of Marriages Act. Counsel talks about intervening events, workings on termination. I also couldn't find anything in the law or the statute that talks about intervening events, so I don't know where that authority comes from. Getting back now to the hearing of due process, whether or not due process was granted, we question the authority of the Board after the initial finding of this Board granting benefits and the 35-day appeal process under the Administrative Appeal Law had run, unilaterally going in and reconsidering this entire case. The case law, including the Rossler case, indicates that you should not use 144.2 to reopen a case outside the benefit period because to do so would leave pension recipients uncertain as to their entitlement to benefits despite the fact that they rely on a prior judgment of the pension. And that's exactly what we're Counsel indicates that they're trying to recoup these benefits because of fiduciary duties. I simply don't see a statutory authority other than for a reduction of future payments even if their position is correct as to her entitlement to benefits to recoup the monies. I simply don't see it. This is a statutorily created fund in the body of law, and if the legislature had wanted to write into that a provision for recovering benefits in a situation like this where a prior hearing had awarded people benefits, they certainly could, but they chose not to. Thank you. Thank you, Counsel. We appreciate the brief arguments of Counsel and we'll take this case under advisement.